IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FPL ENERGY POINT BEACH, LLC,

                              OPINION AND ORDER

       Plaintiff/Counter-Defendant,

                              07-cv-556-bbc

      v.

ENERGY RESOURCES OF
AUSTRALIA LTD.,

       Defendant/Counter-Plaintiff.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       This is a civil action for declaratory relief in which plaintiff FPL Energy Point Beach, LLC contends that defendant Energy Resources of Australia Ltd. is required to recognize plaintiff as a valid assignee of all rights and obligations under a contract originally entered into between defendant and Wisconsin Electric Power Company. Jurisdiction is present. 28 U.S.C. § 1332(a)(2). Currently before the court is plaintiff's motion for summary judgment.

       Plaintiff contends that it is entitled to summary judgment on its claim that it is a valid assignee of the entire contract for three different reasons: (1) because defendant consented to the assignment of the entire contract; or (2) even if defendant did not consent,

1

the contract limited only WEPCO's right to assign the contract, not its power to assign; or (3) defendant withheld its consent unreasonably in violation of the contract's assignment provision.  Defendant disputes plaintiff's contentions, asserting that it did not consent to the assignment of the entire contract, the contract's assignment provision restricted WEPCO's power to assign and defendant's decision to withhold consent was reasonable.

I conclude that defendant consented to WEPCO's assignment to plaintiff of the entire contract for the sale and purchase of uranium concentrate.  Although defendant notified WEPCO and plaintiff that it was still maintaining its position that certain contract rights could not be exercised by an assignee because those rights were specific to WEPCO's particular circumstances, that notification had no effect on its consent to the assignment. Because defendant consented to the assignment of the entire contract, it is irrelevant whether WEPCO was limited in power or right to assign and, because defendant did not withhold its consent, the reasonableness of doing so is not an issue.  Accordingly, plaintiff is a valid assignee of the contract.  Its motion for summary judgment will be granted with respect to its declaratory judgment claim.

In addition to seeking summary judgment on the assignment issue, plaintiff requests summary judgment on defendant's counterclaims as well as defendant's affirmative defenses that (1) plaintiff lacks standing to sue because it was not an assignee of the entire contract; (2) the issues plaintiff raises are not ripe for adjudication because defendant had fully

2

performed its only assigned obligations; (3) WEPCO is an indispensable party because plaintiff is not an assignee of the entire contract; and (4) commercial impracticability made defendant's refusal to consent reasonable. Setting aside defendant's affirmative defenses of ripeness and commercial impracticability because they address breach of contract issues that plaintiff does not raise in this lawsuit, defendant's counterclaims and affirmative defenses are all dependent on defendant's contention that plaintiff is not a valid assignee of the entire contract. Because I find that plaintiff is an assignee of the entire contract, its motion will be granted with respect to defendant's affirmative defenses and counterclaims.

Defendant characterizes the filing of this motion as premature because more discovery was to occur after the motion was filed, but its contention is unpersuasive. First of all, defendant was permitted to address any new relevant information in a sur-reply due in July, several months after "more discovery" had been taken. Even if it had not been given this opportunity, its concern about a premature summary judgment motion rings hollow. At its core, this lawsuit is a contract dispute over contractual terms that have been in place since the fall of 2007. The summary judgment motion was filed in accordance with this court's dispositive motion deadline (dkt. #20), which gave the parties a one-month extension past the original dispositive motion deadline for filing briefs (dkt. #6). A dispositive motion filed on the deadline for such motions is clearly not premature.

From both parties' proposed findings of fact, I find that the following facts are

3

material and undisputed.

## UNDISPUTED FACTS

### A. Parties

Plaintiff FPL Energy Point Beach, LLC is a Wisconsin limited liability company with its principal place of business in Juno Beach, Florida.  Plaintiff is an indirect wholly-owned subsidiary of FPL Group, Inc.  Through its subsidiaries, FPL Group operates several nuclear plants.  Plaintiff owns the Point Beach nuclear power plant near Two Rivers, Wisconsin.

Defendant Energy Resources of Australia Ltd. is an Australian corporation with its principal place of business in Australia.  Defendant mines and mills uranium in Australia and has conducted substantial business in Wisconsin, including selling uranium concentrates to plaintiff in November 2007.

### B. Defendant's Contract with Wisconsin Electric Power Company

On May 28, 1992, defendant entered into a contract with Wisconsin Electric Power Company for the sale and purchase of uranium concentrates.  The contract was amended several times between 1992 and 2006.  From 2000 until September of 2007, Nuclear Management Company, LLC managed WEPCO's Point Beach nuclear plant and acted as WEPCO's agent regarding the contract between WEPCO and defendant.  Nuclear

4

Management was formed by several utilities, including WEPCO, to operate and manage nuclear power plants owned by member utilities.

In the fall of 2000, defendant and WEPCO agreed upon an amendment to the contract entitled "Agreement on Early Repayment of Outstanding Credits Due to WEPCO." The 2000 amendment altered the earlier contract in several ways. Among other things, the parties agreed that (1) defendant would supply 100% of the uranium concentrates needed for WEPCO's Point Beach reactors; (2) WEPCO would purchase at least 400,000 lbs of uranium concentrates from defendant each year covered by the contract; and (3) each year WEPCO could purchase up to 1,000,000 lbs of uranium concentrates from defendant at the contract price. The 2000 amendment also stated that

> Any purchase by WEPCO from [defendant] above their requirements and below 1,000,000 lbs cannot be sold on the spot market in any form. These amounts can only be on-sold to in-house customers, which might be NMC or any other utility that would contract with WEPCO or NMC for fuel design, purchasing and reloading, at the contract price without credits. If WEPCO buys the minimum quantity of 400,000 lbs during a one reload year, then WEPCO is allowed to resell the excess lbs up to 50,000 lbs into any market rather than carry as inventory.

In 2006, defendant and WEPCO extended the contract through December 31, 2009.

Article XIII of the contract provides:

> Neither party shall assign the whole or any part of its rights or obligations under this Contract without the prior consent of the other party (which shall not be unreasonably withheld) except as may be required for a party's financing arrangements.

5

The assignment provision has not been altered by any of the amendments to the contract.

C. WEPCO's Assignment to Plaintiff of the Contract for the Sale and Purchase of Uranium Concentrates

In December 2006, plaintiff entered into an Asset Sale Agreement with WEPCO in which WEPCO agreed to sell plaintiff certain assets, including the Point Beach nuclear power plant. The sale was closed on September 28, 2007.

In a letter dated May 31, 2007, Nuclear Management, acting as WEPCO's agent, requested defendant's consent to the assignment to plaintiff of the contract as amended for the sale and purchase of uranium concentrates between WEPCO and defendant. The letter stated in part that

> Pursuant to Article XIII of the Contract, on behalf of WEPCO we hereby request [defendant's] consent that effective upon closing of [FPL Energy Point Beach, LLC]'s acquisition of WEPCO's ownership interests in Point Beach, WEPCO will assign and transfer to FPLE all of its rights and obligations under the Contract.

In a letter dated July 6, 2007, defendant responded to WEPCO's request and informed WEPCO that it was considering the request, but that it believed some issues needed clarification. In the letter defendant explained that

> Many of the provisions of the Contract, particularly those effectuated by amendments subsequent to the date of the original agreement in 1992, are particular to WEPCO and to your company, and may not be capable of assignment in accordance with the terms of the Contract.

6

It is [defendant's] position that the Contract provides, in general terms, as follows:-

1.  That WEPCO will procure from [defendant], and [defendant] will supply, all of the uranium concentrates required for Point Beach reactors for the duration of the Contract.

2.  WEPCO's minium purchase obligation under the Contract is 400,000 pounds per annum.

3.  If WEPCO purchases the minium quantity of 400,000 pounds during a "one reload year" it may on-sell up to 50,000 pounds of that material that is excess to requirements into any market rather than carry it as inventory.

4.  WEPCO is entitled to elect to purchase more than 400,000 pounds per year up to 1,000,000 pounds per year: -

    (a)  for the purpose of satisfying its requirements for the Point Beach reactors during the currency of the Contract; or

    (b)  for on-sale to "in-house customers, which might be NMC or any other utility that would contract with WEPCO or NMC for fuel design, purchasing and reloading, at the contract price without credits."

It is [defendant's] contention that the rights and obligations set out in the paragraphs 1, 2, 3 and 4(a) above are assignable to FPLE, but that the right referred to in paragraph 4(b) above, being specific to the particular circumstances of WEPCO, is not.

[Defendant] therefore requests your confirmation, and confirmation from FPLE, that what is sought to be assigned and transferred to FPLE is the rights generally described in paragraphs 1 to 4(a) above, but not that set out in paragraph 4(b).

In a letter dated July 11, 2007, plaintiff and WEPCO responded jointly to defendant's July 6 letter by expressing their disagreement with defendant regarding whether what defendant had labeled as paragraph 4(b) in its July 6 letter was a right specific and

7

unique to WEPCO. Plaintiff and WEPCO raised two issues in their July 11 letter to defendant: (1) consent of the non-assigning party shall not be unreasonably withheld and (2) defendant had failed to explain why the provisions set forth in paragraphs 6 and 7 of the 2000 amendment were unique or particular to WEPCO.

Defendant responded to the July 11 letter in a letter of its own dated August 16, 2007. In the August 16 letter, defendant states

> [Defendant] consents to the assignment of the WEPCO contract to FPL Energy. However, we do so on the basis that it remains [defendant's] contention that such an assignment relates to the supply of [uranium concentrate] for the Point Beach reactors, and expressly without prejudice to [defendant's] position in that regard. [Defendant] does not believe that the terms set out in paragraph 4(b) of our letter of 6 July 2007 are assignable or that an assignee of the contract from WEPCO can claim under those provisions.
>
> . . . .
>
> . . . Thus, our consent is to the assignment but we reserve all rights with respect to the nature and quantum of [defendant's] obligations under the contract, particularly if assigned to an assignee who purports to change those.
>
> We appear to have a continuing disagreement. We propose that you proceed with your assignment transaction but that we bind ourselves to an efficient and expedited resolution of our dispute.

On August 24, 2007, WEPCO and plaintiff responded to defendant's August 16 letter in yet another letter, stating that plaintiff "continues to disagree with [defendant's] position on the reasonableness of its refusal to consent to the assignment of the Contract in full . . . ." In the August 24 letter, plaintiff also acknowledged defendant's suggestion that the parties

8

engage in alternative dispute resolution to resolve the remaining dispute.

On September 28, 2007, plaintiff and WEPCO entered into an Assignment and Assumption Agreement regarding the "Contract for the Sale and Purchase of Uranium Concentrates between Energy Resources of Australia, Ltd. And Wisconsin Electric Power Company dated May 28, 1992, as amended." The agreement assigns "all of Assignor's respective rights, title, and interest in and to the ERA Contract in accordance with the terms and conditions set forth herein" and notes that "[defendant] consented to the assignment of the ERA Contract to Assignor by letter dated August 16, 2007."

## OPINION

### A. Governing Law

The parties assume that Wisconsin law governs this dispute, as expressly provided in Article XI of the agreement. I will follow the parties' lead and make the same assumption. FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 283 (7th Cir. 2002) (in absence of any discussion of choice of law issues by parties, court applies law of forum state).

Contract interpretation is a question of law. Deminsky v. Arlington Plastics Machinery, 2003 WI 15, ¶15, 159 Wis. 2d 587, 600, 657 N.W.2d 411, 418. The cardinal purpose of interpreting a contract is to ascertain the intent of the parties. Huml v. Vlazny, 2006 WI 87, ¶52, 293 Wis. 2d 169, 196, 716 N.W.2d 807, 820 (citation omitted).

9

"[C]ontract terms should be given their plain or ordinary meaning." Id. When the contract is unambiguous, "determin[ing] the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence." Id. ¶52, 293 Wis. 2d at 197, 716 N.W.2d at 820 (citing Goldstein v. Lindner, 2002 WI App 122, ¶ 12, 254 Wis. 2d 673, 648 N.W.2d 892).

The Wisconsin courts have explained a court's role in contract interpretation as follows:

> the office of judicial construction is not to make contracts or to reform them, but to determine what the parties contracted to do; not necessarily what they intended to agree to, but what, in a legal sense, they did agree to, as evidenced by the language they saw fit to use.

Miller v. Miller, 67 Wis. 2d 435, 441-42, 227 N.W.2d 626, 629 (1975) (internal quotation marks omitted) (quoting Marion v. Orson's Camera Centers, Inc., 29 Wis. 2d 339, 345, 138 N.W.2d 733, 736 (1966) (quoting Wisconsin Marine & Fire Insurance Co. Bank v. Wilkin, 95 Wis. 111, 115, 69 N.W. 354 (1897)). Rules governing contract interpretation may be extended beyond the actual contract to documents executed in connection with the contract. Walters v. National Properties, LLC, 2005 WI 87, ¶13, 282 Wis. 2d 176, 184, 699 N.W.2d 71, 75 (applying contract interpretation rule to notice drafted pursuant to terms in lease contract).

B.  <u>Consent to Assignment of the Contract</u>

The core issue in dispute is whether defendant consented to the assignment of WEPCO's rights in paragraph 7 of the 2000 amendment.  The plain language in defendant's consent letter establishes unambiguously that it did not withhold consent but instead consented to the assignment of the entire contract while retaining the position that certain rights could not be exercised by an assignee whose circumstances differed from the particular circumstances of WEPCO.

Although somewhat subtle, the difference between withholding consent and contending that certain contractual rights cannot be exercised by a particular assignee is an important difference.  If defendant was withholding consent, then it would be subject to the contractual provision that consent "shall not be unreasonably withheld."  By contending that certain contractual rights were inapplicable to plaintiff, defendant could avoid the unreasonably withheld consent provision.  In effect, defendant could provide consent to the entire contract, while reserving the right to dispute later whether those specific rights could be exercised by the assignee.

Both parties acknowledge defendant's August 16 letter as defendant's consent letter, which was executed in accordance with the contract.  The consent letter states in part that defendant "consents to the assignment of the WEPCO contract to FPL Energy. . . . [Defendant] does not believe that the terms set out in [paragraph 7 of the 2000 amendment]

11

are assignable or that an assignee of the contract from WEPCO can claim under those provisions." The plain language establishes that defendant was consenting to the assignment of the entire contract and contending that WEPCO's rights under paragraph 7 of the 2000 amendment were not susceptible to being exercised by plaintiff, as opposed to withholding consent regarding the assignment of those rights.

Several paragraphs in defendant's consent letter lend further support to this understanding. Particularly, defendant noted that paragraph 7 of the 2000 amendment did not contain provisions that were "standard clauses available to any and every utility," that "not all of the contractual rights are assignable, and that some are 'personal' in nature" and that "[t]he NMC identity and relationship to WEPCO are unique, and [defendant] does not believe that relationship is replicated in the FPL Group structure." Absent from the language in the consent letter is any discussion of withholding consent or the reasonableness of withholding consent. Instead, defendant reiterated that "our consent is to the assignment" and "[w]e propose that you proceed with your assignment transaction." Therefore, the plain language in defendant's August 16 consent letter establishes that defendant did not withhold consent regarding assignment of any contract rights, but merely informed WEPCO and plaintiff that it was not relinquishing its contention that certain rights could not be exercised by plaintiff as assignee because those rights were unique and personal to WEPCO's circumstances.

12

Defendant has now changed its tune regarding consent. The foundation of defendant's new contention is not the language of its consent letter, but previous statements by plaintiff regarding plaintiff's understanding about the effect of defendant's consent letter. One such statement is contained in plaintiff's August 24, 2007 letter: "[plaintiff] understands that [defendant's] consent is reserved as to the optional quantities above the Point Beach requirements. [Plaintiff] continues to disagree with [defendant's] position [in its August 16 letter] on the reasonableness of its refusal to consent to the assignment of the Contract in full . . . ." However, plaintiff's misunderstanding or mischaracterization of defendant's August 16 consent letter does not prove defendant's lack of consent. What defendant consented to is evidenced by the language it saw fit to use in its consent letter. As discussed above, that letter makes it clear that defendant was not withholding consent.

Moreover, the absence from defendant's consent letter of any discussion about the reasonableness of withholding consent confirms that defendant was not withholding consent. The absence of such a discussion must be considered in light of plaintiff's and WEPCO's July 11 letter to defendant. In the July 11 letter, plaintiff and WEPCO raised the unreasonably withheld consent issue as one of two issues presented to defendant, the second issue being defendant's failure to explain what made paragraph 7 of the 2000 amendment "so unique or particular to [WEPCO] that it cannot be assigned." Defendant did not respond to the inquiry about the reasonableness of withholding consent. Instead, it stated that it "consents

13

to the assignment of the WEPCO contract to [plaintiff]" and then went on to address why paragraph 7's "specific reference to WEPCO and its relationship with NMC" made the provision personal to WEPCO. Its failure to mention the issue of reasonably withheld consent in its consent letter, when the issue had been raised expressly, supports the conclusion that it was not withholding consent.

Defendant's July 6 letter provides yet another reason for reading defendant's consent letter as consent to assignment of the entire contract. In that letter, defendant responded to WEPCO's request that defendant agree to the assignment of WEPCO's rights and obligations to plaintiff by explaining that it was "considering its position in relation to [the] proposed assignment." Defendant does not state in the letter that it planned to withhold consent to the assignment of the entire contract or to the assignment of WEPCO's rights in paragraph 7 of the 2000 amendment. Instead, it expressed its concern that certain contract provisions "may not be capable of assignment." Defendant explained that it was taking the position that the contract provision providing WEPCO with the right to purchase up to 600,000 pounds "for on-sale to 'in-house customers'" was a right "specific to the particular circumstances of WEPCO." In effect, defendant was stating that plaintiff could not exercise the rights in paragraph 7 of the 2000 amendment, not because defendant would not consent to the assignment, but because the provision was "specific to the particular circumstances of WEPCO."

14

The plain language of defendant's consent letter, as well as its July 6 letter, establishes that defendant consented to the assignment of the entire contract for the sale and purchase of uranium concentrate while maintaining, "without prejudice," its position that, as an assignee laboring under different circumstances from those specific to WEPCO, plaintiff could not exercise the rights under paragraph 7 of the 2000 amendment. As a matter of law, defendant's consent makes plaintiff the valid assignee of the entire contract entered into between WEPCO and defendant.

### C. Scope of the Rights under Paragraph 7 of the 2000 Amendment

It remains to be determined what specific purchase and resale transactions plaintiff may initiate and whether those transactions would fall within the permitted parameters of paragraph 7 of the 2000 amendment. Courts may not provide advisory opinions on possible and potential actions in which parties may engage. Voight v. Walters, 262 Wis. 356, 359, 55 N.W.2d 399, 401 (1952) ("Courts will not declare rights until they have become fixed under an existing state of facts nor will they determine future rights in anticipation of an event that may never happen.") (internal quotes omitted). For example, although a court can declare that a party has right X under the terms of a contract, the court may not say whether that right encompasses action Y, when that party has not taken action Y.

In that same vein, although plaintiff asks the court to interpret "the Resale Provision,"

15

that is, paragraph 7 of the 2000 amendment, the scope of plaintiff's rights under that provision is not before the court in this lawsuit. Plaintiff has not asserted any claim that would require such an interpretation. Instead, in its complaint, plaintiff requests a declaration that it is a valid assignee of the entire contract between WEPCO and defendant, which entitles it to purchase up to 1,000,000 pounds of uranium from defendant so long as the purchase is in accordance with the terms of the contract. Therefore, I will not address whether, or to whom, plaintiff can re-sell uranium when such uranium is purchased in accordance with the contract and at contract price. However, I do note that whatever the scope of plaintiff's rights, they can be no greater than the scope originally intended by WEPCO and defendant when those parties agreed to provide WEPCO with those rights. Thorp Finance Corp. v. Le Mire, 264 Wis. 220, 224, 58 N.W.2d 641, 642 (1953) ("The well accepted general rule is that an assignee of a contract . . . acquires no greater rights by reason of the assignment than were possessed by the assignor.").

### D. Defendant's Counterclaims and Affirmative Defenses

Plaintiff also requests summary judgment on defendant's counterclaims and affirmative defenses. Defendant's affirmative defenses fail because they are premised on its contention that plaintiff is not a valid assignee of the contract between WEPCO and defendant. The same is true of defendant's counterclaims. Moreover, defendant's

16

contentions in support of its counterclaims are based on the presumption that it withheld consent to the assignment. Now that I have found that defendant did not withhold its consent and that plaintiff is a valid assignee of the entire contract for the sale and purchase of uranium concentrate entered into between WEPCO and defendant, plaintiff is entitled to summary judgment on defendant's affirmative defenses and counterclaims.

ORDER

IT IS ORDERED that

1. Plaintiff FPL Energy Point Beach, LLC's motion for summary judgment (dkt. #29) is GRANTED and defendant Energy Resources of Australia Ltd.'s counterclaims against plaintiff are DISMISSED.

2. The clerk of court is directed to enter judgment in favor of plaintiff declaring that plaintiff is a valid assignee of the entire contract for the sale and purchase of uranium concentrate entered into between Wisconsin Electric Power Company and defendant.

Entered this 14th day of July, 2008.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge

17